Doc # 00067177

record and return to: American Advisors Group
3800 W Chapman Ave, 3rd Floor
Orange, CA 92868

OXFORD WEST DIST. REGISTRY
2013 Sep 30 11:40:29A
JEAN WATSON
REGISTER

Return/Mail To: NCS
5814 Lonetree Blvd.
Rocklin, CA 95765
888-958-8060
2301-55089 2of3 [Space Above This Line For Recording Data]

State of MAINE

See Book 668 Page 121

# ADJUSTABLE RATE
# HOME EQUITY CONVERSION MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on September 3, 2013. The mortgagor is RICHARD J. CULTRERA, SURVIVING JOINT TENANT OF MARTHA J. CULTRERA, WHO DIED ON OCTOBER 24, 2012, whose address is 1680 PEQUAWKET TRAIL, HIRAM, Maine 04041 ("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS"), which is organized and existing under the laws of Delaware, and whose address is P.O. Box 2026, Flint, MI 48501-2026, telephone (888) 679-MERS. American Advisors Group is organized and existing under the laws of California, and has an address of 3800 W Chapman Ave, 3rd Floor, Orange, CA 92868 ("Lender"). Borrower has agreed to repay to Lender amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by Borrower's Adjustable-Rate Note dated the same date as this Security Instrument ("Note"). The mortgagee of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest at a rate subject to adjustment (Interest), and all renewals, extensions and modifications of the Note, up to a maximum principal amount of Two Hundred Twenty Five Thousand Dollars and Zero Cents (U.S. $225,000.00 ); (b) the payment of all other sums, with interest, advanced under paragraph 5 to protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. The full debt, including amounts described in (a), (b), and (c) above, if not due earlier, is due and payable on June 13, 2096. For this purpose, Borrower does hereby mortgage, grant and convey to MERS and to the successors and assigns of MERS the following described property located in OXFORD County, MAINE:

See legal description as Exhibit A attached hereto and made a part hereof for all intents and purposes

BK 616 PG 677

State of Maine                May 30, 2018
         Oxford County, ss.

This will certify that the foregoing is a true copy of an instrument recorded in Oxford County Western District Registry of Deeds on September 30, 2013 at 11:40 AM in Book 616 on Pages 677 through 689.

Attest: *Jennifer R. Zulker, Acting Deputy*
Jennifer R. Zulker
Acting Deputy Register of Deeds
Oxford County (W.D.) Registry of Deeds

EXHIBIT C

which has the address of
**1680 PEQUAWKET TRAIL, HIRAM, Maine 04041**, ("Property Address")

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
**1. Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note.

**2. Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement.

**3. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender or the Secretary of Housing and Urban Development ("Secretary"). Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender instead of to Borrower and Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

Bk 616 Pg 678

*R.J.C.*

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**4. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**5. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

**6. Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the Property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

**7. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation, or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property, and then to the reduction of the indebtedness under the Note and this Security Instrument. Any

Bk 616 Pg 679

*R.J.C.*

excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

    **(a) Due and Payable.** Lender may require immediate payment-in-full of all sums secured by this Security Instrument if:

        (i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

        (ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for not less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).

    **(b) Due and Payable with Secretary Approval.** Lender may require immediate payment-in-full of all sums secured by this Security Instrument, upon approval of the Secretary, if:

        (i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

        (ii) For a period of longer than 12 consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

        (iii) An obligation of the Borrower under this Security Instrument is not performed.

    **(c) Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in this Paragraph 9 (a)(ii) and (b) occur.

    **(d) Notice to Secretary and Borrower.** Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under Paragraph 9 (a)(ii) and (b). Lender shall not have the right to commence foreclosure until Borrower has had 30 days after notice to either:

        (i) Correct the matter which resulted in the Security Instrument coming due and payable; or

        (ii) Pay the balance in full; or

        (iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

        (iv) Provide the Lender with a deed-in-lieu of foreclosure.

    **(e) Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

Bk 616 Pg 680

*R.J.C.*

**(f) Mortgage Not Insured.** Borrower agrees that should this Security Instrument and the Note not be eligible for insurance under the National Housing Act within eight (8) months from the date hereof, if permitted by applicable law Lender may, at its option, require immediate payment-in-full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to eight (8) months from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed. If this Security Instrument is assigned to the Secretary upon demand by the Secretary, Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

**11. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment-in-full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment-in-full. Foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment-in-full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

**12. Lien Status.**

(a) **Modification.**

Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the property is not encumbered by any liens (except this Security Instrument, the Second Security Instrument described in Paragraph 13(a) and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

(b) **Tax Deferral Programs.**

Borrower shall not participate in a real estate tax deferral program, if any liens created by the

Bk 616 Ps 681

*R.J.C.*

tax deferral are not subordinate to this Security Instrument.

**(c) Prior Liens.**

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**13. Relationship to Second Security Instrument.**

**(a) Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and a Second Security Instrument on the Property.

**(b) Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the Note unless:

(i) This Security Instrument is assigned to the Secretary; or

(ii) The Secretary accepts reimbursement by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the Note.

**(c) Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under the Note, or pay any rents and revenues of the Property under Paragraph 19 to Lender or a receiver of the Property, until the Secretary has required payment-in-full of all outstanding principal and accrued interest under the Second Note; or

(ii) Be obligated to pay interest or shared appreciation under the Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the Note.

**(d) No Duty of the Secretary.** The Secretary has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 13.

**14. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or

Bk  616  Pg  682

R.J.C.

remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**15. Successors and Assigns Bound; Joint and Several Liability.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender. Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

**16. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

**17. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**18. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**19. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

**20. Foreclosure Procedure.** If Lender requires immediate payment-in-full under Paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, attorneys' fees and costs of title evidence.

**21. Lien Priority.** The full amount secured by this Security Instrument shall have the same priority over any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made, regardless of the actual date of any disbursement. The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other loan advances permitted by this Security Instrument for any purpose. This lien priority shall apply notwithstanding any State constitution, law or regulation, except that this lien priority shall not affect the priority of any liens for unpaid State or local governmental unit special assessments or taxes.

**22. Adjustable-Rate Feature.** Under the Note, the initial stated interest rate of **2.934%** which accrues on the unpaid principal balance ("Initial Interest Rate") is subject to change, as described below. When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding principal balance. Each adjustment to the interest rate will be based upon the average of interbank offered rates for one-month U.S. dollar denominated deposits in the London Market ("LIBOR"), as published in The Wall Street Journal ("Index"), rounded to three digits to the right of the decimal point, plus a margin. If the Index is no longer available, Lender will be required to use any index prescribed by the Department of Housing and Urban Development. Lender will give Borrower notice of new index.

Lender will perform the calculations described below to determine the new adjusted interest rate. The interest rate may change on **December 1, 2013 and on the first day of each succeeding month.** "Change Date" means each date in which the interest rate could change.

The value of the Index will be determined, using the most recent Index figure available thirty (30) days before the Change Date ("Current Index"). Before each Change Date, the new interest rate will be calculated by adding a margin to the Current Index. The sum of the margin plus the Current Index will be called the "Calculated Interest Rate" for each Change Date. The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date (the "Existing Interest Rate").

The Calculated Interest Rate will never increase above **12.934%**

The Calculated Interest Rate will be adjusted if necessary to comply with the rate limitation(s) described above and will be in effect until the next Change Date. At any change date, if the Calculated Interest Rate equals the Existing Interest Rate, the interest rate will not change.

**23. Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering to the appropriate Registry of Deeds a discharge or release stating that this Security Instrument has been satisfied. Borrower will not be required to pay Lender for the discharge, but Borrower will pay all costs of recording the discharge in the proper official records (unless those costs were collected in advance of loan closing).

**24. Payment During Foreclosure.** Borrower agrees that Lender may accept rents from the Property, hazard insurance proceeds, condemnation awards, and any other monies produced by the Property or paid by Borrower, even though Lender has demanded immediate payment in full and begun foreclosure and sale under Paragraph 20 above. Lender may use such monies to pay off any part of the sums secured without affecting Lender's right to continue foreclosure and sale.

**25. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded

together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

| ☐ Condominium Rider | ☐ Planned Unit Development Rider |
|---|---|
| ☐ Other [Specify] | |

**26. Nominee Capacity of MERS.** MERS Serves as mortgagee of record and secured party solely as nominee for Lender and its successors and assigns and holds legal title to the interests granted, assigned, and transferred herein. All payments or deposits with respect to the Secured Obligations shall be made to Lender, all advances under the Loan Documents shall be made by Lender, and all consents, approvals, or other determinations required or permitted of Mortgagee herein shall be made by Lender. MERS shall at all times comply with the instructions of Lender and its successors and assigns. If necessary to comply with law or custom, MERS (for the benefit of Lender and its successors and assigns) may be directed by Lender to exercise any or all of those interests, including without limitation, the right to foreclose and sell the Property, and take any action required of Lender, including without limitation, a release, discharge or reconveyance of this Mortgage.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_Richard J. Cultrera_ (SEAL)  
RICHARD J. CULTRERA

9/3/2013  
Date

[Space Below This Line For Acknowledgment]

State of MAINE

County of Oxford

The foregoing instrument was acknowledged before me this  9/21 2013  by  Richard J. Cuttiera .

_____
(signature of person taking acknowledgment)

Anthony J. Bessey
(print name)

Notary Public, Me
(title or rank)

NA
(serial number, if any)

My Commission Expires 9/27/2014

Anthony J. Bessey
Notary Public Maine
My Commission Expires: September 27th, 2014

Bk  616  Pg  686

R.J.C.

[Space Below This Line For Acknowledgment]

State of MAINE

County of Oxford

The foregoing instrument was acknowledged before me this   9/3/2013   by

Richard J. Cultrera.

_____
(signature of person taking acknowledgment)

Anthony J. Bessey
(print name)

Notary Public, Me
(title or rank)

N/A
(serial number, if any)

My Commission Exp 9/03/2015

Anthony J. Bessey
Notary Public Maine
My Commission Expires: September 27th, 2014

Bk 616 Pg 687

Page 10 of 11     R.J.C.     HECM First Mortgage

HECM First Mortgage

## EXHIBIT A

Exhibit A to the Mortgage made on September 3, 2013, by **RICHARD J. CULTRERA, SURVIVING JOINT TENANT OF AND MARTHA J. CULTRERA, WHO DIED ON OCTOBER 24, 2012** ("Borrower") to Mortgage Electronic Registration Systems, Inc. ("MERS") ("Mortgagee").

## Description of Property

LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT "A" AND BY THIS REFERENCE MADE A PART HEREOF

Bk 616 Pg 688

R.J.C.

Order No.
Version 2
AMEND

EXHIBIT "A"
LEGAL DESCRIPTION

THE LAND DESCRIBED HEREIN IS SITUATED IN THE STATE OF MAINE, COUNTY OF OXFORD, AND IS DESCRIBED AS FOLLOWS:

PARCEL ON:

A CERTAIN LOT OR PARCEL OF LAND, WITH ANY BUILDINGS THEREON, SITUATED IN THE TOWN OF HIRAM, COUNTY OF OXFORD, AND STATE OF MAINE, BOUNDED AND DESCRIBED THUS:

BEGINNING AT THE JUNCTION OF THE OLD RICHARDSON ROAD WITH THE COUNTY ROAD AND RUNNING UP THE RICHARDSON ROAD, SOUTH 55 DEGREES WEST ON THE SOUTHERLY SIDE OF SAID ROAD, TWELVE AND TWO-THIRDS RODS TO A STAKE AND STONES; THENCE SOUTH 35 DEGREES EAST, TWELVE AND TWO-THIRDS RODS TO A STAKE AND STONES; THENCE NORTH 55 DEGREES EAST TO A SAID ROAD, ELEVEN AND TWO-THIRDS RODS; THENCE UP SAID COUNTY ROAD TO FIRST MENTIONED BOUNDS, CONTAINING ONE ACRE, MORE OR LESS, TOGETHER WITH THE BUILDINGS THEREON. RESERVING ANY PART THEREOF THAT MAY BE OCCUPIED BY THE MAINE CENTRAL RAILROAD, SEE DEED IN OXFORD WESTERN REGISTRY, BOOK 57, PAGE 584; ALSO DEED OF MARY J. SARGENT AND OTHERS TO WILLIAM C. CLEMONS, BOOK 88, PAGES 148, 149 AND 150.

ALSO TWO ACRES AND THREE-EIGHTS OF LAND IN SAID HIRAM, WITH ANY BUILDINGS THEREON, BOUNDED SOUTHEASTERLY BY LAND ONCE OWNED BY IMOGENE CLEMONS, NOW OCCUPIED BY THOMAS S. SARGENT; ON THE NORTHWESTERLY BY THE WA. C. CLEMONS HOMESTEAD AND BUILDINGS FIRST DESCRIBED; EASTERLY BY THE TOWN ROAD, AND WESTERLY BY THE MAINE CENTRAL RAILROAD.

PARCEL TWO:

A CERTAIN LOT OR PARCEL OF LAND, WITH ANY BUILDINGS THEREON, LOCATED WESTERLY OF THE MAINE CENTRAL RAILROAD RIGHT OF WAY, SIXTY FEET SQUARE, IN THE CENTER OF WHICH IS LOCATED THE SPRING WHICH SUPPLIES WATER TO THE RESIDENCE, AND A RIGHT OF WAY TWO RODS IN WIDTH, THE CENTER LINE OF WHICH SHALL BE THE COURSE OF THE PIPELINE AS NOW LAID LEADING FROM SAID SPRING TO THE RESIDENCE, WITH THE RIGHT AT ALL TIMES TO ENTER UPON SAID RIGHT OF WAY FOR THE PURPOSE OF INSPECTING, REPAIRING AND MAINTAINING SAID SPRING AND PIPELINE AND TO RELAY SAID PIPELINE ALONG ANY COURSE WITHIN THE LIMITS OF SAID

PARCEL NUMBER(S): R9 L:10, R9 L:28

Bk 616 Pg 689

VM.COMMIT.LEGAL